## BANKRUPTCY OF S. C. ALLEN.

### BEFORE HARRIS, J.

### FEBRUARY, 1875.

The bankrupt having petitioned for a discharge from his debts, under Section 983, Civil Code: and having obtained "consent of a majority of his creditors in value and number within this Kingdom:"

Held, that creditors resident in California, although represented here by power of attorney, are not "within this Kingdom:" and that treaty provisions as to foreigners resident in this country do not apply to them: they may allege their reasons for refusal of a discharge, but are not entitled to vote on the matter.

Theory of our bankrupt law considered: and the bankrupt held entitled to his discharge.

### DECISION OF HARRIS, J.

Mr. Samuel C. Allen having complied with all the provisions of the Bankrupt Act, now petitions for a discharge from all his

debts, presenting simultaneously with his petition a paper signed by a majority of his creditors in value and number within this Kingdom. The statute under which he claims his discharge reads as follows:

Section 983, Civil Code.—"Every person who, upon finding himself insolvent, shall declare himself a bankrupt, or may have been adjudged a bankrupt on petition, as provided in this article, and who shall surrender, discover, and deliver over to the assignees chosen by his creditors all his property, personal and real, shall, with the consent of a majority of his creditors in value and number within this Kingdom, be entitled to a certificate of discharge from all his debts, to be given him by the Chief Justice of the Supreme Court; provided, however, that no such discharge shall release any person who may be liable for the same debt, as a partner, joint contractor, indorser, acceptor or surety for or with the debtor."

But it is objected on the part of Messrs. Williams, Blanchard & Co., and Messrs. Welch & Co., doing business in San Francisco, State of California, that the applicant cannot have his discharge: First, because he has not the assent of a majority of his creditors in number and quantity, if they be taken in the Kingdom, as they withhold their consent; and they say that though corporally outside of the Kingdom, they are for the purposes of this statute within the Kingdom, because they are represented here by persons holding their powers of attorney. And in this connection they say that the only just motive for a statute of this kind is to "save debtors from delay in waiting the pleasure of absent creditors."

Secondly, that if the statute is held to oust these contestants of equal rights to be heard on the question of the release of the applicant, they rely on the numerous treaty provisions which secure them all the civil rights which subjects have "to enjoy their property in as full and ample a manner as subjects." —American Treaty, Article 8. "Full and perfect protection in regard to their property and the same right as native subjects." —British Treaty, Article 8. "The same protection as regards

their properties as native subjects," etc.—Bremen Treaty, Article 2.

I apprehend that it is a mistake to suppose that the *only* just motive for passing a statute of this kind is "to save the delay incidental to waiting the pleasure of absent creditors," for bankrupt laws are passed not only for the benefit of the individual who seeks to be discharged from his debts, but of the community—to give to the community in which the debtor lives the advantage of his renewed hope, energy and enterprise. They are based on the proposition that the debtor, having given up all his property, and being free from imputation of fraud in the matter of his bankruptcy, it is just towards him, and for the interest of all his fellow citizens, that his future efforts should not be hampered by his previous debts; and it is on this last point that the creditors residing abroad have no interest. The debtor having complied with certain conditions, the community, acting through the Legislature, prohibit their courts from entertaining any further suits against him for debts incurred before.

They might have vested the authority to discharge absolutely in the Court, but have chosen to limit the authority of the Court by requiring as a last condition (all others having been fulfilled) the consent of a majority of the creditors in number and value within the Kingdom. Thus it will be seen that the statute does not preclude the foreign creditors from an "equal right to be heard on the release." On the contrary, they have a right to be heard to offer reasons against the discharge; and if they establish concealment of property, collusion with other creditors, mutilation of documents, or, in general terms, fraud, a discharge would not be granted notwithstanding the consent of the majority. It is only when all have been heard, and all things have been found to be straight, and no further *reason* can be urged against the discharge, that the policy of the law comes in and says in effect: Creditors have got all the property of which the debtor is possessed; and though we limit the authority of our Courts to discharge by requiring the consent of the majority in number and value of those resident in this country, we will

limit it no further; and the foreign creditors who are inaccessible to the calls of sympathy, and to whom a debtor's daily difficulties do not appeal, upon whose mind chagrin at having lost his debt may be, and probably is, the only influence, shall not have any vote to prevent our Court from granting our fellow citizen his discharge.

The provisions in the treaties referred to will be better understood and applied if quoted in full. The American Treaty reads as follows: "And each of the two contracting parties engages that the citizens or subjects of the other residing in their respective states, shall enjoy their property and personal security in as full and ample manner as their own citizens or subjects, or the subjects or citizens of the most favored nation, but subject always to the laws and statutes of the two countries respectively."

It will be seen that this provision is about foreigners resident in this country. This statute is not opposed to it in any way. It does not put foreigners resident in this country on any different footing from native subjects.

The British Treaty reads: "The subjects of either of the contracting parties, in the territories of the other, shall receive and enjoy full and perfect protection for their persons and property, and shall have free and open access to the courts of justice in said countries, respectively, for the prosecution and defense of their just rights."

It will be seen again that this concerns foreigners resident within this country, and surely the contestants in this case are not complaining that their persons or their property are not receiving full and perfect protection within the provision of this article. If it can be said that the discharge of a bankrupt is withdrawing full and perfect protection, it would be the same withdrawal if the Court should be authorized to do so without the concurrence of any body; as it is, they are authorized to grant the discharge after having the concurrence of the majority of the creditors in number and value resident or being in the country.

It will be seen by the course of reasoning adopted that I do not regard Messrs. Williams, Blanchard & Co., and Welch & Co., as being within this Kingdom as meant by the statute, because they are represented by a power of attorney.

*A. S. Hartwell,* for contestants.

*Samuel C. Allen,* in person.

February 12, 1875.